UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT CLEARY,

        Plaintiff,

Case No. 07-11940

v.

District Judge Paul V. Gadola
Magistrate Judge R. Steven Whalen

UNITED STATES DEPARTMENT
OF AGRICULTURE and FARM
SERVICE AGENCY,

        Defendants.

_____/

**REPORT AND RECOMMENDATION**

Before the Court is a *Complaint for Judicial Review of Administrative Action,* filed on May 3, 2007. Plaintiff Robert Cleary and Defendant United States Department of Agriculture's cross-motions for summary judgment [Docket #10, 11]have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's motion be DENIED and Plaintiff's motion GRANTED, declaring that the July 21, 2003 Review by the National Appeals Division Director and September 25, 2003 Reconsideration by the Deputy Director are unlawful and reinstating the Appeal Determination of June 5, 2003.

-1-

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff Robert Cleary, a Minden City, Michigan farmer, filed the instant action on May 3, 2007 pursuant to 7 U.S.C. §6999 in accordance with the Administrative Procedure Act, 5 U.S.C. §§701-706. Plaintiff makes the following allegations. On September 19, 2001, Plaintiff signed an Irrevocable Offer and Contract to Participate in a Sugar Payment-In-Kind ("PIK") Diversion Program. *Complaint* at §5. Under the terms of the contract, Plaintiff agreed not to harvest sugar beets planted on approximately 15 acres placed in the PIK Diversion Program.[1] *Id.* at ¶7. On October 22, 2001, the Commodity Credit Corporation ("CCC"), acting on behalf of the United States Department of Agriculture ("USDA") "and or" the Farm Service Agency ("FSA"), approved the PIK contract. *Plaintiff's Brief* at 1. On or about December 7, 2001 and December 10, 2001, the Sanilac Service Center of the FSA conducted "spot checks" of the PIK acreage, concluding that Plaintiff had "improperly harvested the sugar beets. . . in violation of the terms of the PIK

---

[1] The "Irrevocable Offer and Contract to Participate in the 2001 Sugar Payment-In-Kind Diversion Program" ("PIK") states that in pertinent part:

> "[a] participant who is determined to have erroneously represented any fact affecting a determination with respect to CCC-744, adopted any scheme or device which tends to defeat the purposes of CCC-744 or made any fraudulent representation with respect to CCC-744 will not be entitled to payments, in-kind or otherwise, or any other benefits made in accordance with CCC-744 and the participant must refund to CCC the dollar value of the sugar transferred to CCC to such participant, plus interest and liquidated damages. . . . CCC will establish a claim for the full amount of refund and liquidated damages against each participant in accordance with 7 C.F.R. Part 1403.

Contract". *Complaint* at ¶¶8-9. Defendant FSA informed Plaintiff that he was required to refund "the value of the inventory sugar for $19,875 ($1,325 x 15 acres)" as well as liquidated damages of $59, 625 for a total of $79,500.[2] *Id*. at ¶10. On March 4, 2002, Plaintiff requested an appeal hearing, held on April 24, 2004 before the committee of the Sanilac Service Center. *Id.* at ¶¶11-12. The committee the upheld original determination, further finding against offering a lesser settlement amount. *Id.* at ¶13. On May 8, 2002, Plaintiff requested an appeal hearing before Defendant FSA's State Committee, contending that there was insufficient evidence to support the committee's finding. *Id*. at ¶¶14-15. Following a July 10, 2002 meeting, the State Committee upheld the earlier FSA findings. *Id.* at ¶17.

Parties entered into mediation on September 3, 2002, agreeing on a settlement amount of $19,875. *Id.* at ¶19. Notwithstanding ongoing mediation, on September 8, 2002 Plaintiff requested an appeal of the State Committee's findings to the National Appeal Division ("NAD") on the basis that the Sanilac Service Center failed to "present sufficient evidence to the reviewing authorities." *Id.* at ¶20. The request also alleged that the state committee had ignored evidence "showing the presence of beets in the field after plowing," further noting that the "county inspectors did not present any photographs or plot surveys," *Id.* On September 23, 2002, the USDA found the request premature in light of ongoing mediation. *Id.* at ¶21. On October 30, 2002, FSA's Michigan State Executive Director recommended

---

[2]The Complaint incorrectly states the total as $59,625. *Compare Complaint* at ¶10, *Id.* at Exhibit B.

that the liquidated damages of $59, 625 be waived, requesting authorization by the Deputy Administrator of Farm Programs ("DAFP"). *Id.* at ¶22. The DAFP denied the request on January 7, 2003, determining instead that Plaintiff should be liable for $14,906 in liquidated damages, combined with the value of the inventory sugar for a total of $34,781. *Id.* at ¶¶23-24. Plaintiff then resubmitted his appeal to NAD, followed by a May 14, 2003 hearing. *Id*. at ¶¶26-27.

On June 5, 2003, a NAD Hearing Officer found that Defendant FSA's earlier determination that Plaintiff was in violation of the 2001 PIK Contract was erroneous ("Appeal Determination"). *Id*. at ¶28. On June 26, 2003, Defendant FSA requested a review of the determination by the Director of NAD. *Id.* at ¶29. Plaintiff submitted a response on July 12, 2003. *Id*. at ¶30. On July 21, 2003, the Director of NAD reversed the Appeal Determination ("Review"). *Id*. at ¶31. On July 31, 2003, Plaintiff submitted a Request for Reconsideration which was denied by NAD's Deputy Director on September 25, 2003. *Id.* at ¶¶32-33.

Plaintiff alleges that the Director's Review reversing the Appeals Decision and the subsequent Reconsideration by the NAD's Deputy Director contain multiple procedural, legal, and factual errors. First, Plaintiff states that the Director's decision is invalidated by his failure to consider the Plaintiff's July 12, 2003 submission. *Id.* at ¶39(a). Plaintiff also contends that the Deputy Director's later attempt to "cure" the Director's failure to consider his pleading was "legally insufficient." *Id.* Next, Plaintiff alleges that the Director did not consider evidence showing that the acreage had *not* been harvested, ignoring exculpatory

material within the FSA's own records. *Id*. at ¶39(b). Plaintiff also notes that the Director impermissibly overlooked FSA's failure to support its position with photographic evidence, contending further that the Director erred by questioning the hearing officer's credibility determination. *Id*. at ¶39(c)-(d). Plaintiff contends that the Review is further tainted by the erroneous finding that a "comparison field" observed by FSA agents "had the same drainage" as the acreage in dispute, despite evidence to the contrary. *Id.* at ¶39(e). Plaintiff alleges that the Director's findings, completely unsupported by evidence, amount to a denial of his substantive and procedural due process rights. *Id.* at ¶39(g). He asks the Court to declare that the July 21, 2003 Director's Review and September 25, 2003 Reconsideration by the Deputy Director are unlawful, reinstating the Appeal Determination of June 5, 2003 as well as attorneys' fees and costs.

## II.  LEGAL PRINCIPLES

### A. Standard of Review

"A final determination of the [National Appeals] Division shall be reviewable and enforceable by any United States district court of competent jurisdiction." 7 U.S.C. § 6999. "Judicial review of the USDA's final determination . . . is governed by the Administrative Procedures Act." *McElmurray v. U.S. Dept. of Agriculture,* 535 F.Supp.2d 1318, 1324 (S.D.Ga.2008)("APA")(*citing* 7 U.S.C. § 6999 (1999); 5 U.S.C. § 701-706 (2007). "An agency's decision, including its actions, findings, and conclusions, should not be overturned unless the decision is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law' or unless it is 'unsupported by substantial evidence.'" *Id.* (*citing* 5

U.S.C. § 706(2)(A) & (E) (2007)).

> "An agency's decision is 'arbitrary and capricious' when 'the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'"

*City of Cleveland v. Ohio,* 508 F.3d 827, 838 (6th Cir. 2007)(citing *Motor Vehicles Mfrs. Assoc. v. State Farm Mutual Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). "The reviewing court should not attempt itself to make up for such deficiencies" and "'may not supply a reasoned basis for the agency's action that the agency itself has not given.'" *Motor Vehicle*, at 43, 2867 (internal citations omitted). "We will, however, 'uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.'" *Id., citing Bowman Transp. Inc. v. Arkansas-Best Freight System,* 419 U.S. 281, 286, 95 S.Ct. 438, 442. 419, 42 L.Ed.2d 447 (1974). "Substantial evidence review 'gives the agency the benefit of the doubt, since it requires not the degree of evidence which satisfies the *court* that the requisite fact exists, but merely the degree which *could* satisfy a reasonable factfinder.'" *Wilson Air Center, LLC v. F.A.A.,* 372 F.3d 807, 813 (6th Cir. 2004)(*citing Allentown Mack Sales & Serv., Inc. v. NLRB,* 522 U.S. 359, 377, 118 S.Ct. 818, 139 L.Ed.2d 797 (1998)). However, "[t]he substantial evidence standard does not excuse the agency from its duty to engage in reasoned decision-making." *Haebe v. Dep't of Justice,* 288 F.3d 1288, 1301 (Fed.Cir.2002).

### B. Administrative Procedure (NAD)

Following an initial determination of non-compliance and applicable county and state appeal remedies, "a party may appeal an adverse FSA decision to NAD by requesting a hearing before a Hearing Officer" pursuant to 7 C.F.R. § 11.6(b). *Rookstool v. U.S. Dept. of Agriculture*, 2008 WL 2312926, *3 (D.Nev. 2008); *Beard v. Glickman,* 189 F.Supp.2d 994, 997 (C.D.Cal. 2001)). "During the hearing, the parties may present evidence, oral testimony of witnesses, arguments in support of the party's position, and may controvert evidence relied upon by the other party." *Rookstool*, at *3; 7 C.F.R. § 11.8(c)(5)(ii). "'The appellant has the burden of proving that the adverse decision of the agency was erroneous by a preponderance of the evidence.'" *Id.*; (*citing* 7 C.F.R. § 11.8(e)). The losing party may then appeal the Hearing Officer's Appeals Decision to NAD's Director. 7 C.F.R. § 11.9. "The Director reviews the determination of the Hearing Officer to determine whether the decision is supported by substantial evidence." *Id.*; 7 C.F.R. § 11.9 (d). *See also Groenendyk v. Johanns,* 2008 WL 428157, *5 (S.D.Iowa 2008); *Payton v. United States Dep't of Agric.,* 337 F.3d 1163, 1169 (10th Cir.2003)("Appellant bringing action for review of NAD decision overruling a hearing officer's decision bears the burden of proof that the NAD decision was not based on substantial evidence.") Following the Review, the losing party may make a timely request for reconsideration by either NAD's Director or Deputy Director. 7 C.F.R. §§ 11.09, 11.11. The Reconsideration constitutes a final determination of the division. §11.13.

### III. ANALYSIS

Substantial evidence supports neither the Director's Review nor the Deputy Director's Reconsideration. Standing alone, the Director's failure to consider Plaintiff's July 12, 2003 Response before reversing the Hearing Officer's Decision invalidates his findings. The Director's failure to adhere to the procedural requirements set forth in 7 C.F.R. § 11.9 (d), coupled with erroneous factual conclusions, renders the final administrative determination arbitrary and capricious, and requires reversal.

The Director made additional errors of law and fact by failing to consider critical evidence, including unrebutted evidence supporting Plaintiff's contention that he did not harvest. The Director's review also contains the erroneous finding that the Hearing Officer did not perform a credibility assessment.

**A. The Director's Failure to Consider Plaintiff's Response**.

The Director's failure to consider his July 12, 2003 submission before issuing his Review determination on July 21, 2003 constitutes a "clear procedural error." I disagree with Defendant's contention that "any possible injustice was cured by the Deputy Director's review of the document. *Defendant's Brief* at 13. In support of its harmless error argument, Defendant submits that the disregarded Response "simply reargued matters already submitted in the record." *Id.*

As initial matter, the parties agree that the Director's failure to review the Response constitutes procedural error pursuant to 7 C.F.R. § 11.9(d), which requires that NAD's Director "will conduct a review of the determination of the Hearing Officer using the agency

record, the hearing record, the request for review [and] *any responses . . .*" (emphasis added).

The failure to consider Plaintiff's Response is a substantive, as well as procedural error. As discussed above, upon appealing an Agency determination to NAD, Plaintiff is entitled to an evidentiary hearing. 7 U.S.C. § 6997(b)(*see also* 7 C.F.R. § 11.6(b)(c)). However, this entitlement was effectively nullified by the Director's decision to reverse the hearing officer's findings without considering Plaintiff's arguments and summation of the evidence in favor of affirmance. While "[a]n agency's interpretations of congressional acts, and even more so of its own regulations, are entitled to great deference," *Green v. U.S., supra* 8 F.Supp.2d 983, 997 (W.D.Mich.1998); *United States v. Baxter Healthcare Corp.,* 901 F.2d 1401, 1407 (7th Cir.1990), the Director's decision to reverse absent *any* review of Plaintiff's timely filed arguments against reversal was patently arbitrary and capricious.

I also disagree that the Deputy Director's September 25, 2003 Reconsideration "cured" the Director's earlier failure to consider Plaintiff's arguments. The first paragraph of the "reconsideration" letter acknowledges as much, stating as follows:

> "The reconsideration provision at 7 C.F.R. §11.11 reflects NAD's inherent authority to review Director review determinations to correct errors. These are errors (such as citation to the wrong dates, wrong amounts, wrong regulations, or wrong statutes), *not changes of interpretations or opinions*."

*Docket #10*, Exhibit T at 1 (emphasis added). The Reconsideration's validity is further undermined by its conclusion that "the Director review determination is consistent with applicable statutes and regulation," despite the fact that both parties agree, at the very least, that the Director's failure to consider Plaintiff's Response was plainly in violation of 7

C.F.R. § 11.9(d). Further, the Reconsideration's statement that the Plaintiff's response was "inadvertently separated from the record until after the determination was signed" does not excuse the Director's responsibility to consider Plaintiff's position before issuing a decision. *Id.* That the Director could not be bothered to locate Plaintiff's response before ruling against him, standing alone, fatally undermines his Review. Worse yet is the Deputy Director's purely speculative finding that reversal was futile because the Plaintiff's unreviewed submission "essentially reargued points that had already been made in the record before the hearing officer." *Id.* Those "points" obviously persuaded the hearing officer of the merit of the Plaintiff's position. By forging ahead without the benefit of the Plaintiff's submission, the Director made a decision that was both procedurally and substantively flawed.

An examination of Plaintiff's additional allegations of error further shows that the Director's decision was substantively uninformed.

**B. The Director's Review of the Hearing Officer's Credibility Determination**

The Director's Review unreasonably discounted the hearing officer's credibility determination. *Plaintiff's Brief* at 10 (¶d). In determining that the Hearing Officer "did not make a credibility assessment," the Review states as follows:

> "Instead of assigning some measure of weight to [Plaintiff's] testimony and the evidence that he submitted in support of his position, the Hearing Officer simply concluded that [Plaintiff's] testimony supported his position that FSA erred. I do not find this evidence and testimony of sufficient weight to overcome the reports of a field inspector and county officials."

*Docket #10*, Exhibit R at 3.

The Director's acknowledged failure to review Plaintiff's Response before deciding against him is coupled by a careless reading of the Hearing Officer's opinion. The June 5, 2003 Hearing Officer's Appeals Decision reads as follows:

> "[Evidence provided by both parties] *when considered in conjunction with the testimony of [Plaintiff] and his hired man*, provides support to [Appellant's] claim that the sugar beets on the PIK acreage had been weather-damaged (emphasis added). The lateness of the season when FSA officials conducted their field visits to examine evidence of a sugar beet crop (over one month from the date of the field measurement) *lends credibility to [Plaintiff's] testimony that fall tillage . . . had been completed prior to the spot check*."

*Id*., Exhibit O at 4 (emphasis added). Thus, the hearing officer did not just pull his credibility assessment out of a hat, as the Director implied. Rather, he found, based on *all* the evidence before him, that the testimony of the Plaintiff and his employee was substantially corroborated by extrinsic facts proffered by *both* parties. Under these circumstances, it was arbitrary and capricious to conclude that the hearing officer's well-informed decision was not supported by substantial evidence.

The Director also omitted mention of the hearing officer's finding that the "FSA did not obtain information from eyewitnesses in the form of signed affidavits from neighbors or other disinterested third parties that may have observed [Plaintiff] harvesting the PIK acreage." *Id*. Moreover, the erroneous finding that the Hearing Officer did not conduct a credibility determination is accompanied by his lack of deference to the fact that the Hearing Officer actually heard the testimony of Plaintiff and his employee and was therefore in a

better position to determine its veracity.[3]

## C. Director's Failure to Consider Other Critical Evidence

In addition, I agree with the contention that the Director failed to consider critical evidence supporting the Hearing Director's finding that Plaintiff did not harvest. Further, the Review omits discussion of Plaintiff's argument that "FSA failed to produce" documents in its possession that support his position. *Plaintiff's Brief* at 10 ¶b; Exhibit Q. (Agency Exhibit 31, Appellant's Exhibit B).

Defendant's response that "[t]here is no basis for [Plaintiff's] assumption that the Director did not consider the documents or the hearing transcript" is unavailing. *Defendant's Brief* at 13. While the background section of the Review states that at least one FSA agent "observed that the headlands had not been harvested," the Review makes no reference to the fact that Defendant FSA allegedly withheld this potentially exculpatory material from Plaintiff. *Docket #10*, Exhibit R. Because Plaintiff's unheeded Response devotes almost an entire page of discussion to this issue, the Director's failure to discuss the FSA's withholding of critical evidence constitutes a substantive error. *Docket #10*; Exhibit

---

[3]

In addition to upholding, reversing, or modifying the Hearing Officer's determination, 7 C.F.R. § 11.9(d) permits the Director to remand a matter if the hearing record is inadequate. Therefore, upon finding that the Hearing Officer should have "assign[ed] some measure of weight to Plaintiff's testimony, the obvious remedy would have been to remand for clarification, rather than conduct his own credibility determination. In this case, however, it is apparent that the hearing officer's credibility determination was more than adequately supported.

Q at 2.  Further, the Reconsideration did not cure this error.  The Reconsideration disputes that the allegedly withheld material (AR 137) contradicted other evidence presented by Defendant FSA (AR 25), but again, does not substantively address whether the FSA withheld exculpatory evidence and its possible impact on the credibility determination.  *Docket #10*, Exhibit T at ¶2.

Next, the Court addresses Plaintiff's contention that the Director's Review failed "to note or apparently consider" the FSA's failure "to produce any evidence that rebutted or controverted" evidence of weather conditions or photographs of the acreage supporting his claim. *Plaintiff's Brief* at 10.  Defendant disputes Plaintiff's "assumption" that the Director failed to consider the absence of weather condition or photographic evidence, noting further that Defendant FSA "was not under any obligation to take photographs.  *Defendant's Brief* at 14.  Defendant also contends that existing weather conditions would not be determinative as to whether or not sugar beets had been harvested from the subject acreage." *Id.*

In fact, the Director's Review references Plaintiff's allegations "that adverse weather conditions early in the growing season, in combination with fall tillage in the area of suspected harvest caused the lack of crop residue in that area."  *Docket #10*, Exhibit R. However, instead of either addressing the lack of rebuttal evidence or comparing Plaintiff's submissions to evidence supporting the FSA, the Review jumps directly from its "adverse weather conditions" observation to the unsupported and unrelated that the Hearing Officer failed to assign "some measure of weight to [Plaintiff's] testimony." *Docket #10*, Exhibit R at 3.  The Review omits mention of photographic evidence except to state in the procedural

history section that "the Hearing Officer determined that, based on Appellant's testimony and *Appellant's* photographs. . . . that he had not harvested the PIK acreage." *Id.* at 2-3. (Emphasis added). Likewise, the September 25, 2003 Reconsideration, in addition to stating that "the Director reviewed and considered the entire case record," attempts to discount the photographs by stating that they "attest only to [the acreage's great variations in residual plant materials -from abundant in areas to devoid of any in other areas," concluding that "[t]hey do not provide proof that FSA erred in determining that some acreage was harvested." *Id.*, Exhibit T at ¶5.

Once again, the reconsideration does not provide a "cure" for the Director's failure to consider Plaintiff's Response. First, as noted above, the conclusion that the Director considered the entire record is unsupported by the Director's Review. Second, even assuming that the photographs and evidence of weather conditions do not constitute *irrefutable* proof that Plaintiff did not harvest beets, as the Hearing Officer found, this evidence strongly supports the hearing officer's credibility determination by corroborating Plaintiff's testimony that inconsistent conditions encountered by FSA agent's in various portions of the acreage were attributable to drainage problems. *Id.,* Exhibit O at 3.

### D. Additional Errors Contained in the Director's Review

The above errors easily support a finding that the Director's Review was arbitrary and capricious. Nonetheless, the Court will briefly discuss Plaintiff's three additional arguments in favor of reinstating the Hearing Officer's findings. First, Plaintiff argues that the Director's Review erroneously concluded that a "comparison field" examined by the County

FSA Committee had the same drainage as the acreage at issue. *Docket #10* at 11 (¶e). Although Defendant contends that the Review does not make the specific finding that the fields "had the same drainage as the PIK acreage," the Review states as follows: "On December 10, 2001, the Sanilac County FSA Committee . . . conducted a field visit of the the site plus another PIK acreage site (where no problems were found) for comparison." *Defendant's Brief* at 14; *Docket #10*, Exhibit R at 2.

Contrary to the Defendant's argument, the Director's comment that the second field was used for comparison purposes indicates that he assumed that the two fields were comparable in all relevant aspects. *Docket #10*, Exhibit R at 2. His finding that "no problems were found" in the second field strongly implies that his decision in favor of the Agency was colored by the erroneous belief the two fields were comparable.[4]

However, I do disagree with Plaintiff's argument that Defendant FSA's position was *completely* unsupported by record evidence. *Plaintiff's Brief* at 11(¶¶f-g). Defendant notes that the FSA's position was supported by "visual inspections of the farm by five different people with farming experience." *Defendant's Brief* at 15. The FSA provided evidence in the form of initial reports as well as county and state findings in support of its position that Plaintiff had harvested in breach of the PIK contract, despite the absence of supporting testimony or photographs at the hearing. I will acknowledge, then, that the FSA's position

---

[4] Either standing alone or in combination with the Director's many other mistakes, this factual error was significant, and I must therefore reject Defendant's alternative argument that the Director's observations regarding the "comparison field" were not material to the outcome of the case. *Docket #11* at 15.

is not *completely* devoid of support, notwithstanding multiple procedural and substantive shortcomings found in the Director's Review. However, a preponderance of evidence easily supports the Hearing Officer's determination that the FSA erroneously determined that Plaintiff had breached the PIK contract. 7 C.F.R. § 11.8(e).

More to the point, the Hearing Officer made a well-supported and well-reasoned decision based on a fair assessment of all the evidence, including the credibility of the Plaintiff and his employee, and correctly applied the salient legal principles. That decision was unassailable under the substantial evidence standard of 7 C.F.R. §11.9(d). The Director's highly flawed and result-oriented reversal of the Hearing Officer was grounded in a distortion of the record, was arbitrary and capricious, and should not be validated by this Court.

As to the remedy: Plaintiff requests the Court declare that the July 21, 2003 Director's Review and September 25, 2003 Deputy Director's Reconsideration are unlawful, reinstating the Appeal Determination of June 5, 2003. Defendant counters that "[i]f the Court should find the challenged agency action not sustainable on the agency record, it is not the function of the court to build a new record upon which it may reach its own conclusions." *Defendant's Brief* at 15-16 (*citing Camps v. Pitts*, 411 U.S. 138, 143, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973); *Federal Power Commission v. Transcontinental Gas Pipe Line Corp.*, 423 U.S. 326, 331, 96 S.Ct. 579, 582, 46 L.Ed.2d 533 (1976)). However, Defendant does not specify how remanding to NAD for further consideration would remedy the errors in question.

The plain language of 5 U.S.C. § 706(2) requires this Court to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." The Director's Review, performed without consideration of Plaintiff's Response, is by itself a gross violation of Plaintiff's due process rights. 7 U.S.C.A. § 6998. Instead of "curing" this error, the Deputy Director's Reconsideration simply reiterated substantive errors found in the Review and is likewise arbitrary, an abuse of discretion, and unlawful.

"While . . . agencies are granted tremendous deference in interpreting Congressional directives and in formulating implementing regulations, that deference must end when an agency acts as arbitrarily and obtusely with regard to the law and facts. . ." *Mahon v. U.S. Dept. of Agriculture,* 485 F.3d 1247, 1261 (11th Cir. 2007). Finding that remanding for further proceedings "inappropriate," the court in *McElmurray v. U.S. Dept. of Agriculture, supra,* 535 F.Supp.2d 1318, 1336 (S.D.Ga. 2008) instead vacated administrative determinations which "unevaluated or ignored" the record, reinstating an earlier determination in favor of Plaintiff. "The agency 'is not entitled to a second bite of the apple just because it made a poor decision-if that were the case, administrative law would be a never ending loop from which aggrieved parties would never receive justice.'" *Id*; (*citing McDonnell Douglas Corp. v. NASA,* 895 F.Supp. 316, 319 (D.D.C.1995)); *See also Seward v. U.S. Dept. of Agriculture,* 229 F.Supp.2d 557, 571 (S.D.Miss. 2002).

For the reasons set forth above, remand is similarly inappropriate here. Instead, the Court should declare that the July 21, 2003 Director's Review and September 25, 2003

Deputy Director's Reconsideration are unlawful, reinstating the Appeal Determination of June 5, 2003.

### IV.  CONCLUSION

For these reasons, I recommend that Defendant's motion for summary judgment be DENIED, and that Plaintiff's motion for summary judgment be GRANTED, declaring that the July 21, 2003 Director's Review and September 25, 2003 Deputy Director's Reconsideration are unlawful, and reinstating the Appeal Determination of June 5, 2003.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the

objections.

                                      S/R. Steven Whalen  
                                      R. STEVEN WHALEN  
                                      UNITED STATES MAGISTRATE JUDGE

Dated: July 28, 2008

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on July 28, 2008.

                                        S/Gina Wilson  
                                        Judicial Assistant